IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| LINDA WUNDER DEL PIANO, and DOUGLAS B. HACKETT, as Trustee of the Paulehia Street Trust, | ) ) ) ) ) | CIVIL NO. 11-00140 SOM/BMK ORDER GRANTING (1) DEFENDANTS MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S, |
| Plaintiffs, Pro Se, | ) | ONEWEST BANK, FSB'S, HSBC BANK USA, N.A., A NATIONAL |
| vs. | ) ) | ASSOCIATION, AS TRUSTEE FOR BCAP 2008-IN1'S, SUCHAN MURRAY'S, AND INDYMAC |
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., "MERS," its successors in interest and/or assigns, INDYMAC FINANCIAL SERVICES, a division of ONEWEST BANK, FSB, its successors in interest and/or assigns, ONEWEST BANK, FSB, its successors in interest and/or assigns, EXPRESS CAPITAL LENDING, its successors in interest and/or assigns, HSBC BANK USA, N.A., a National Association, as Trustee for BCAP 2008-IN1, its successors in interest an/or assigns, FIRST AMERICAN TITLE INSURANCE CO., its successors in interest and/or assigns, SUCHAN MURRAY, employee of OneWest Bank, ROUTH CRABTREE OLSEN, P.S., PETER T. STONE, AND DOES 1 TO 10, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | FINANCIAL SERVICES, INC.'S (INCORRECTLY NAMED IN THE AMENDED COMPLAINT AS INDYMAC FINANCIAL SERVICES) MOTION FOR SUMMARY JUDGMENT (RE: AMENDED COMPLAINT FOR VERIFICATION OF DEBT ELSE RELEASE OF CLAIM AND FOR DECLARATORY AND INJUNCTIVE RELIEF, FILED MAY 20, 2011); (2) DEFENDANT FIRST AMERICAN TITLE INSURANCE CO.'S JOINDER; AND (3) HSBC BANK USA, N.A., A NATIONAL ASSOCIATION, AS TRUSTEE FOR BCAP 2008-IN1'S MOTION FOR SUMMARY JUDGMENT (RE: HSBC'S BANK USA, N.A.'S COUNTERCLAIM FOR FORECLOSURE), AND FOR INTERLOCUTORY DECREE OF FORECLOSURE |
| Defendants. | ) ) ) | |

ORDER GRANTING (1) DEFENDANTS MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.'S, ONEWEST BANK, FSB'S, HSBC
BANK USA, N.A., A NATIONAL ASSOCIATION, AS TRUSTEE FOR
BCAP 2008-IN1'S, SUCHAN MURRAY'S, AND INDYMAC FINANCIAL
SERVICES, INC.'S (INCORRECTLY NAMED IN THE AMENDED
COMPLAINT AS INDYMAC FINANCIAL SERVICES) MOTION FOR
SUMMARY JUDGMENT (RE: AMENDED COMPLAINT FOR VERIFICATION
OF DEBT ELSE RELEASE OF CLAIM AND FOR DECLARATORY
AND INJUNCTIVE RELIEF, FILED MAY 20, 2011);
(2) DEFENDANT FIRST AMERICAN TITLE INSURANCE CO.'S JOINDER;
AND (3) HSBC BANK USA, N.A., A NATIONAL ASSOCIATION, AS
TRUSTEE FOR BCAP 2008-IN1'S MOTION FOR SUMMARY JUDGMENT
(RE: HSBC'S BANK USA, N.A.'S COUNTERCLAIM FOR FORECLOSURE),
<u>AND FOR INTERLOCUTORY DECREE OF FORECLOSURE</u>

## I.   <u>INTRODUCTION.</u>

On January 25, 2011, Plaintiff Linda Wunder Del Piano

("Del Piano") commenced this action in the Circuit Court of the

Third Circuit, State of Hawaii, against Defendants Mortgage

Electronic Registration Systems, Inc. ("MERS"), IndyMac Financial

Services, Inc. ("IndyMac"), OneWest Bank, FSB ("OneWest"),

Express Capital Lending ("Express Capital"), HSBC Bank USA, N.A.

("HSBC"), First American Title Insurance Co. ("First American"),

Suchan Murray ("Murray"), Routh Crabtree Olsen, P.S. ("RCO"), and

Peter T. Stone ("Stone") (collectively, "Defendants") in

conjunction with pending foreclosure proceedings against her

home.  Del Piano asserts a variety of state and federal claims

against Defendants, primarily alleging that Defendants lack

standing to foreclose on her property because they allegedly

cannot produce the original promissory note and mortgage.

MERS, OneWest, HSBC, Murray, and IndyMac (collectively,

"MERS Defendants") now move for summary judgment on all counts.

First American joins in the motion.  <u>See</u> Defs. Mortgage
Electronic Registration Systems, Inc.'s, OneWest Bank, FSB's,
HSBC Bank USA, N.A., a National Association, as Trustee for BCAP
2008-IN1's, Suchan Murray's and IndyMac Financial Services,
Inc.'s (Incorrectly Named in the Am. Compl. as IndyMac Financial
Services) Mot. for Summ. J. (Re: Am. Compl. for Verification of
Debt Else Release of Claim and for Declaratory and Inj. Relief,
Filed May 20, 2011), ECF No. 77; Mem. of Points of Authorities in
Supp. of Mot. for Summ. J., ECF No. 78 ("MERS Motion"); Def.
First American Title Insurance Co.'s Joinder in Mot. for Summ.
J., ECF No. 83.

HSBC also moves for summary judgment on its
Counterclaim, seeking judicial foreclosure against Del Piano.
<u>See</u> Def. HSBC Bank USA, N.A., a National Association, as Trustee
for BCAP 2008-IN1's Mot. for Summ. J. (Re: HSBC Bank USA, N.A.'s
Counterclaim for Foreclosure), and for Interlocutory Decree of
Foreclosure, ECF No. 75 ("HSBC Motion").

II.   <u>BACKGROUND.</u>

In March 2007, in conjunction with the purchase of real
property located at 75-6116 Paulehia Street, Kailua-Kona, Hawaii,
96740, Del Piano executed an adjustable rate note (the "Note")
for the principal amount of $453,250.00 in favor of Express
Capital.  <u>See</u> Am. Compl. For Verification of Debt Else Release of
Claim and for Declaratory and Injunctive Relief ("Am. Compl.")

¶ 4.2, ECF No. 45; MERS Motion at 4, ECF No. 78.  The Note is secured by a first priority mortgage (the "Mortgage") in favor of MERS, solely as nominee for Express Capital.  The Mortgage was assigned to HSBC pursuant to an assignment recorded on December 9, 2010.  Am. Compl. ¶ 4.15, ECF No. 45; Assignment of Mortgage, attached as Exhibit "C" to MERS Motion, ECF No. 79.  At some unspecified time, HSBC also took possession of the Note by mesne indorsement of the Note, including an indorsement in blank, which converted the Note to a bearer instrument.  See Decl. of C. Boyle ¶ 6, ECF No. 79-1.  OneWest represents that it currently holds the Note as HSBC's agent.  Id.

In or around 2008, Del Piano began suffering financial hardship and successfully filed for bankruptcy protection.  Am. Compl. ¶¶ 4.7, 4.9, ECF No. 45.  In May 2009, Del Piano defaulted on her loan.  Decl. of C. Boyle ¶ 9, ECF No. 79-1.  MERS Defendants allege that although they made a demand for the principal and interest due under the Note, Del Piano failed to pay those amounts.  Id. ¶¶ 9-10.  Del Piano represents that the current market value of her property has dropped to approximately $350,000.00.  Am. Compl. ¶ 4.6, ECF No. 45.

On or around April 28, 2010, Del Piano allegedly sent a document to Defendants with the heading "Qualified Written Request, Complaint, Dispute of Debt and Validation of Debt Letter, TILA Request," purportedly in compliance with 12 U.S.C.

4

§ 2605(e).  <u>See</u> Letter from L. Del Piano to Express Capital Lending et al. (Apr. 28, 2010), attached as Exhibit "A" to Pl. Response to Def. Mot. for Summ. J. (Re: Am. Compl. for Verification of Claim and for Declaratory and Injunctive Relief, Filed May 20, 2011) ("Opposition"), ECF No. 93.  Del Piano essentially questioned the validity of Defendants' ownership of the Note and demanded proof relating to various loan origination documents and the assignment of the Note.  <u>Id.</u>  This and other documents are not properly authenticated by Del Piano for purposes of the present motions.  Although Del Piano does not present evidence in admissible form, this court considers Del Piano's exhibits and allegations with the thought that, if this case were tried, Del Piano would authenticate the documents herself and testify to certain factual allegations.  <u>See</u> <u>Fraser v. Goodale</u>, 342 F.3d 1032, 1036-37 (9th Cir. 2003).

Also on or around April 28, 2010, Del Piano purportedly sent Defendants a letter she refers to as a "Self-Executing Agreement."  <u>See</u> Am. Compl. ¶ 4.11, ECF No. 45; Exhibit "D" to Compl., ECF No. 1-1.  The Self-Executing Agreement purported to offer full payment on the Note in exchange for Defendants' surrender of the "Original unaltered instrument, or wet-ink Note."  Am. Compl. ¶ 4.11.c, ECF No. 45.  Del Piano also demanded copies of a number of mortgage documents verifying Defendants' standing to foreclose.  <u>Id.</u> ¶ 4.11.d.  The Self-Executing

Agreement provided that Defendants' failure to respond within 15 days would be treated as an agreement "that they were committing illegal activities and participating in an illegal scheme to take from Plaintiff Del Piano her monies and property." Id. ¶ 4.12. Defendants did not respond to the Self-Executing Agreement or any subsequent correspondence regarding the same. Id. ¶¶ 4.12-4.14.

On December 9, 2010, HSBC commenced a nonjudicial foreclosure of Del Piano's property by recording a Notice of Mortgagee's Intention to Foreclose Under Power of Sale. Id. ¶ 4.17. Shortly thereafter, on January 25, 2011, Del Piano filed suit in state court. It is that action that is now before this court pursuant to a removal by MERS. See Notice of Removal of Action to Federal Court Based on Federal Question Jurisdiction, ECF No. 1. On April 25, 2011, Del Piano recorded a Quitclaim Deed in the Bureau of Conveyances, purporting to convey Del Piano's interest in the property to the Paulehia Street Trust, with Douglas B. Hackett as trustee. See MERS Motion at 6, ECF No. 78; Quitclaim Deed, attached as Exhibit "F" to MERS Motion, ECF No. 79.

Plaintiff Douglas B. Hackett, as trustee of the Paulehia Street Trust, was previously prohibited from proceeding as a plaintiff, barring any real interest in this proceeding, or from representing Del Piano. See Mot. to Strike Douglas B. Hackett, as Trustee of The Paulehia Street Trust, as Pl., and for

Award of Appropriate Sanctions, ECF No. 55; EP, ECF No. 62; Order Granting in Part and Denying in Part Defs. Mot. to Strike Douglas B. Hackett, As Trustee of The Paulehia Street Trust, as Pl. and for Award of Appropriate Sanctions, ECF No. 70; Tr. of Proceedings Before the Honorable Susan Oki Mollway (June 13, 2011), ECF No. 72.  Hackett has not subsequently asserted any interest in this action.  At the hearing on the Motion to Strike, the court put on the record its findings as to Hackett's lack of any interest in the property and the legal authorities on which the court was relying.  See Tr. of Proceedings, ECF No. 72.[1]

Pursuant to this court's order dismissing the original complaint, see EP, ECF No. 19, Del Piano filed her Amended Complaint on May 20, 2011.  See Am. Compl., ECF No. 45.  The Amended Complaint contains a total of ten claims, each identified either as a "cause of action" ("COA") or a "claim for relief" ("CFR").  Id.  Many of the claims duplicate each other and some assert multiple or incomplete claims within a single count:

(1) First Cause of Action: Violation of U.C.C. §§ 3-603 and 3-604 Discharging and Settling the Alleged Debt in Full;

---

[1] Having sought an order striking Hackett, MERS Defendants then argued at the hearing on the present motions that Del Piano is not the proper owner of the subject property and that only Hackett can attack the foreclosure.  MERS Defendants cannot argue, on the one hand, that Hackett lacks standing to pursue claims in this case, yet, on the other hand, that he is the proper party to challenge the foreclosure.

(2) Second Cause of Action: Violation of Not Holding Possession of the Original Promissory Note; Possession is Necessary; Broken Chain of Title;

(3) Third Cause of Action: Violations of 28 U.S.C. § 2201 Create No Standing for Enforcement of Power of Sale of the Mortgage; Improper Assignment of Mortgage;

(4) Fourth Cause of Action: Violations of the Uniform Commercial Code;

(5) First Claim for Relief: Temporary and Permanent Injunctive Relief to Cancel and Enjoin Any Foreclosure Sale;

(6) Second Claim for Relief: Declaratory Relief;

(7) Third Claim for Relief: As a Violation of an Attempt to Foreclose Without Proof of Real Party in Interest, Defendants Have No Right to Foreclose; Foreclosure Sale Must be Stopped and Plaintiffs Given Sufficient Discovery to Prove Their Case;

(8) Fourth Claim for Relief: Breach of Contract (against MERS and HSBC);

(9) Fifth Claim for Relief: Violation of 12 U.S.C. § 2605(e) (against IndyMac);

(10) Sixth Claim for Relief: Due to Violations of Law by All Defendants, the Alleged Debt is Settled in Full; No Debt is Owed; Debt Must be Expunged and Reported as Such; Reconveyance of Deed; Reporting.

On June 3, 2011, HSBC filed a Counterclaim for Foreclosure and Tortious Interference with Contractual Relations (the "Counterclaim") against Del Piano.  See Countercl., ECF No. 54-1.  On or around June 9, 2011, HSBC cancelled the pending nonjudicial foreclosure by recording a Notice of Rescission of

Mortgagee's Intention to Foreclosure Under Power of Sale.  MERS

Motion at 6, ECF No. 78; Notice of Rescission, attached as

Exhibit "G" to MERS Motion, ECF No. 79.

III. STANDARD OF REVIEW.

        Summary judgment shall be granted when "the movant

shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a) (2010).  See Addisu v. Fred Meyer, Inc., 198

F.3d 1130, 1134 (9th Cir. 2000).  The movants must support their

position that a material fact is or is not genuinely disputed by

either "citing to particular parts of materials in the record,

including depositions, documents, electronically stored

information, affidavits or declarations, stipulations (including

those made for the purposes of the motion only), admissions,

interrogatory answers, or other materials"; or "showing that the

materials cited do not establish the absence or presence of a

genuine dispute, or that an adverse party cannot produce

admissible evidence to support the fact."  Fed. R. Civ. P. 56(c).

One of the principal purposes of summary judgment is to identify

and dispose of factually unsupported claims and defenses.

Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

        Summary judgment must be granted against a party that

fails to demonstrate facts to establish what will be an essential

element at trial.  See id. at 323.  A moving party without the

9

ultimate burden of persuasion at trial--usually, but not always, the defendant--has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. <u>Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.</u>, 210 F.3d 1099, 1102 (9th Cir. 2000).

The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987) (citing <u>Celotex Corp.</u>, 477 U.S. at 323). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986) (footnote omitted).

The nonmoving party may not rely on the mere allegations in the pleadings and instead must set forth specific facts showing that there is a genuine issue for trial. <u>T.W. Elec. Serv., Inc.</u>, 809 F.2d at 630. At least some "'significant probative evidence tending to support the complaint'" must be produced. <u>Id.</u> (quoting <u>First Nat'l Bank of Ariz. v. Cities Serv. Co.</u>, 391 U.S. 253, 290 (1968)). <u>See</u> <u>Addisu</u>, 198 F.3d at 1134 ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of

material fact."). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co., 475 U.S. at 587). Accord Addisu, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

All evidence and inferences must be construed in the light most favorable to the nonmoving party. T.W. Elec. Serv., Inc., 809 F.2d at 631. Inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. Id. When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." Id.

IV.   THE MERS MOTION FOR SUMMARY JUDGMENT.

Many of Del Piano's COAs and CFRs repeat allegations. In the interest of addressing the claims efficiently, the court adopts MERS Defendants' grouping of similar claims.

A.    <u>Discharge Of Debt (First COA, Sixth CFR).</u>

Del Piano seeks the discharge of her mortgage, arguing in her Sixth CFR that her debt was settled in full because "(1) Plaintiff tendered full payment with a third party escrow agent conditioned on Defendants producing verification of debt . . . ; (2) Conversion of the original Promissory Note to a 'check' by stamping it "Pay to the Order of (...) without Recourse" and have [sic] been paid in full; (3) there was misrepresentation, and/or misleading information, and/or false statements in the mortgage documents, which vitiates a contract, hence there is no debt[.]" Am. Compl. ¶ 14.2, ECF No. 45.  None of these theories, also alleged in her First COA, entitles Del Piano to the relief she seeks.

The court begins by examining the Self-Executing Agreement that Del Piano sent to Defendants.  Del Piano says the document was a tender of full payment entitling her to a discharge of her debt under U.C.C. section 3-603, codified in Hawaii as section 490:3-603 of the Hawaii Revised Statutes.  That section states:

> (b) If tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument and the tender is refused, there is discharge, to the extent of the amount of the tender, of the obligation of an indorser or accommodation party having a right of recourse with respect to the obligation to which the tender relates.

12

Haw. Rev. Stat. § 490:3-603(b) (1991).  A tender is defined as "an unconditional offer of money or performance to satisfy a debt or obligation." Black's Law Dictionary 1608 (9th ed. 2009). See Arnolds Mmgt. Corp. v. Eischen, 158 Cal. App. 3d 575, 580, 205 Cal. Rptr. 15, 18 (Cal. App. 1984) (under California statutes, "a tender must be one of full performance and must be unconditional to be valid" (citations omitted)).

Del Piano does not establish that the Self-Executing Agreement was an actual tender of payment under section 490:3-603.  The document said that Del Piano would put $500,000.00 into "escrow," which was apparently a notary public.  In exchange, Defendants were to surrender the Note. See Self-Executing Agreement, attached as Exhibit "D" to Compl., ECF No. 1-1. Specifically, Del Piano proposed: "I will accept your offer and tender full payment to be held in escrow by JAN SCHIEBERL a third party NOTARY PUBLIC (address above).  In return you will agree to have your client LENDER/AGENTS immediately produce the original note which it claims to be holding and to which I am entitled upon payment." Id. Del Piano further provided that a failure to produce the Note upon the notary's receipt of the tender would effect a release of the mortgage: "you agree that once the notary/escrow agent is in receipt of my tender of payment in the amount of $500,000.00, if you and LENDER/AGENTS should fail to immediately produce the original note or contract, you agree to

13

immediately release your claim for $500,000.00 due to your fraud." Id. The offer was not an unconditional payment to Defendants. Nor did it provide Defendants with any assurance that they would receive payment in full; Defendants were supposed to surrender the Note once a notary was in receipt of Del Piano's "tender of payment."

Del Piano's reference to her "tender of payment," as opposed to the actual payment of money, would surely have given Defendants pause, as Del Piano may have thought her submission of a letter offering or promising payment sufficed as a "tender." Defendants understandably would have wondered why a notary public who was presumably unknown to them was involved. No law requires Defendants to discharge a note or mortgage based on a borrower's mere words.

The United States District Court for the District of Nevada was recently presented with a similar scenario and surveyed decisions nationwide:

> Next, Plaintiffs allege that Defendants violated U.C.C. § 3-603 by failing to settle their account after they submitted an "acceptance of offer/claim upon the presentment of original note" offering "full legal tender" of $433,471.04 in exchange for the original, "wet ink" promissory note. (Pls.' Am. Compl. 7:28, 8:1-9, ECF No. 8.) U.C.C. § 3-603 outlines when tender of a payment discharges a debt owed. Plaintiffs' argument is known as the "bill of exchange" theory and has not yet been presented in foreclosure cases in the District of Nevada. However, it has been rejected across the

14

country by district courts in other circuits. <u>Hennis v. Trustmark Bank</u>, No. 2:10CV20-KS-MTP, 2010 WL 1904860, *5 (S.D. Miss. May 10, 2010) ("From coast to coast, claims that debts have been paid under the redemption theory by the plaintiffs' issuance of 'bills of exchange' have been dismissed as frivolous."); <u>Santarose v. Aurora Bank</u>, No. H-10-0720, 2010 WL 3064047, at *4 (S.D. Tex. Aug. 3, 2010) (court rejected plaintiff's "bill of exchange" theory in settling a mortgage debt because plaintiffs failed to provide any legal authority to support the claim); <u>Tesi v. Chase Home Finance</u>, No. 4:10-cv-272-Y, 2010 WL 2293177, at *6 (N.D. Tex. June 7, 2010) (plaintiff's "bonds" rejected as full payment of amount due on mortgage).

<u>Potter v. BAC Home Loans Servicing, LP.</u>, No. 2:10-cv-02095-GMN-LRL, 2011 WL 2971204, *6 (D. Nev. July 19, 2011).  Del Piano's reliance on this argument is as unavailing here as the plaintiff's argument in the <u>Potter</u> case.

Del Piano additionally argues that Defendants discharged the Note when they stamped the words "Pay To The Order Of ( ) Without Recourse" on the Note.  Del Piano alleges that "Defendants knowingly, intelligently and willfully converted the Original Promissory Note to a 'CHECK' and then 'cashed' and/or monetized the Original Promissory Note/CHECK and gave Plaintiff Del Piano the Federal Reserve Notes as a 'currency exchange' and NOT as a loan."  Am. Compl. ¶ 5.2, ECF No. 45.  Del Piano attaches as Exhibit "C" to the Amended Complaint a more detailed explanation of her claim.

In Exhibit "C," Del Piano describes what she says were the steps taken during her loan origination, starting with the premise that Defendants altered the promissory note, allegedly converting it into a "check":

3.     Upon information and belief, Defendants, jointly and/or separately, then sold the "check."  Defendants, jointly and/or separately, then gave the funds Defendants, jointly and/or separately, received for the sale of the check to a third party (escrow agent).

4.     The third party (escrow agent) then gave the real property to Plaintiff Del Piano.

5.     Upon information and belief, pursuant to U.C.C. § 3-604 these events caused the sales of the Promissory Note to be completed and perfected.

6.     Defendants, jointly and/or separately, then committed an illegal transaction upon Plaintiff Del Piano by claiming that Defendants, jointly and/or separately, would "loan" Plaintiff Del Piano money.

7.     Plaintiff Del Piano then started paying Defendants, jointly and/or separately, monthly in accordance with the agreement known in this instant case as the "Mortgage."

8.     Upon information and belief, Defendants, jointly and/or separately, have failed to supply Plaintiff Del Piano with any of the money Defendants, jointly and/or separately, claimed Defendants, jointly and/or separately, would "loan" to Plaintiff Del Piano.

9.     Plaintiff Del Piano ceased paying Defendants, jointly and/or separately,

16

for Defendants', jointly and/or separately, DISHONOR and/or DEFAULT of said agreement.

10. Upon information and belief, to date, Plaintiff Del Piano still has not received ANY money from Defendants, jointly and/or separately, for said agreement.

11. Upon information and belief, the ONLY money received by Plaintiff Del Piano from Defendants, jointly and/or separately, was the money and/or property Plaintiff Del Piano received from Defendants, jointly and/or separately, for the sale of the Promissory Note from Plaintiff Del Piano to Defendants, jointly and/or separately.

Material Facts and Material Issues, attached as Exhibit "C" to Am. Compl., ECF No. 45-3.

Del Piano misconstrues a loan origination.  Similarly mistaken is her assertion that the sale or assignment of her Note to another entity satisfies her debt and entitles her to periodic payments from Defendants.  The argument that the sale or transfer of a note satisfies a mortgage has already been rejected by this district:

Defendants argue that the first mortgage is no longer enforceable because the first mortgage note was satisfied when Plaintiff sold it to a third party. Defs.' Appeal 10-12, 27-28.  Defendants' argument is absurd.  The sale of the note underlying the first mortgage does not extinguish the debt owed; rather, the buyer of the note takes the place of the original mortgagee and is "vested with all the powers and rights of the [original mortgagee]." <u>Beneficial Haw., Inc.</u>

17

v. Kida, 96 Hawaii 289, 314 n.9, 30 P.3d 895, 920 n.9 (2001) (quotations omitted).

In re O'Kelley, 420 B.R. 18, 26 (D. Haw. 2009).  Del Piano's Opposition provides no further guidance or clarification on this issue.

Finally, Del Piano appears to superficially assert that Defendants breached a contract based on the Mortgage and Note. As discussed later in this order, Del Piano fails to establish a breach of contract.  The court grants summary judgment to all Defendants as to the First and Sixth CFR.

B.    Lack Of Standing (Second COA, Third COA, Fourth COA, Third CFR).

Four of Del Piano's claims essentially assert that MERS lacked standing to foreclose and that foreclosure proceedings should be stayed to allow Del Piano to conduct discovery.  The Second COA argues that Defendants must prove that they hold the Note; the Third COA alleges that MERS did not own the underlying Note and therefore could not assign it to HSBC; the Fourth COA mimes the Second COA and demands that Defendants surrender the original Note; and the Third CFR asks the court to allow further discovery to determine the identity of the real party in interest that has standing to foreclose.

The court reads these four claims in combination as a challenge to MERS's ability to validly possess and assign Del Piano's Note.  MERS's participation in the mortgage loan process

18

was recently addressed by the Ninth Circuit in <u>Cervantes v.</u>

<u>Countrywide Home Loans, Inc.</u>, 656 F.3d 1034 (9th Cir. 2011):

>MERS is a private electronic database, operated by MERSCORP, Inc., that tracks the transfer of the "beneficial interest" in home loans, as well as any changes in loan servicers.  After a borrower takes out a home loan, the original lender may sell all or a portion of its beneficial interest in the loan and change loan servicers.  The owner of the beneficial interest is entitled to repayment of the loan.  For simplicity, we will refer to the owner of the beneficial interest as the "lender."  The servicer of the loan collects payments from the borrower, sends payments to the lender, and handles administrative aspects of the loan.  Many of the companies that participate in the mortgage industry--by originating loans, buying or investing in the beneficial interest in loans, or servicing loans--are members of MERS and pay a fee to use the tracking system.

<u>Id.</u> at 1038-39.  <u>Cervantes</u> discussed the need for a foreclosing

party to hold both the note and mortgage:

>In the event of a default on the loan, the lender may initiate foreclosure in its own name, or may appoint a trustee to initiate foreclosure on the lender's behalf.  However, to have the legal power to foreclose, the trustee must have authority to act as the holder, or agent of the holder, of both the deed and the note together. . . .  The deed and note must be held together because the holder of the note is only entitled to repayment, and does not have the right under the deed to use the property as a means of satisfying repayment. . . . Conversely, the holder of the deed alone does not have a right to repayment and, thus, does not have an interest in foreclosing on the property to satisfy repayment. . . .  One of the main

> premises of the plaintiffs' lawsuit here is
> that the MERS system impermissibly "splits"
> the note and deed by facilitating the
> transfer of the beneficial interest in the
> loan among lenders while maintaining MERS
> as the nominal holder of the deed.

Id. at 1039 (internal citations omitted).

The Ninth Circuit, addressing arguments very much like

Del Piano's, went on to say:

> The plaintiffs' lawsuit is also premised
> on the fact that MERS does not have a
> financial interest in the loans, which,
> according to the plaintiffs, renders MERS's
> status as a beneficiary a sham.  MERS is not
> involved in originating the loan, does not
> have any right to payments on the loan, and
> does not service the loan.  MERS relies on
> its members to have someone on their own
> staff become a MERS officer with the
> authority to sign documents on behalf of
> MERS. . . .  As a result, most of the actions
> taken in MERS's own name are carried out by
> staff at the companies that sell and buy the
> beneficial interest in the loans.

Id. at 1039-40 (internal citations omitted).

Ultimately, in connection with the plaintiffs' claim

for "wrongful foreclosure," the Ninth Circuit held,

> Even if we were to accept the
> plaintiffs' premises that MERS is a sham
> beneficiary and the note is split from the
> deed, we would reject the plaintiffs'
> conclusion that, as a necessary consequence,
> no party has the power to foreclose.  The
> legality of MERS's role as a beneficiary may
> be at issue where MERS initiates foreclosure
> in its own name, or where the plaintiffs
> allege a violation of state recording and
> foreclosure statutes based on the
> designation.  See, e.g., Mortgage Elec.
> Registration Sys. v. Saunders, 2 A.3d 289,

20

294-97 (Me. 2010) (concluding that MERS cannot foreclose because it does not have an independent interest in the loan because it functions solely as a nominee); Landmark Nat'l Bank, 216 P.3d at 165-69 (same); Hooker v. Northwest Tr. Servs., No. 10-3111, 2011 WL 2119103, at *4 (D. Or. May 25, 2011) (concluding that the defendants' failure to register all assignments of the deed of trust violated the Oregon recording laws so as to prevent non-judicial foreclosure). But see Jackson, 770 N.W.2d at 501 (concluding that defendants' failure to register assignments of the beneficial interest in the mortgage loan did not violate Minnesota recording laws so as to prevent non-judicial foreclosure). This case does not present either of these circumstances and, thus, we do not consider them.

    . . . . Even if MERS were a sham beneficiary, the lenders would still be entitled to repayment of the loans and would be the proper parties to initiate foreclosure after the plaintiffs defaulted on their loans.  The plaintiffs' allegations do not call into question whether the trustees were agents of the lenders. . . .

    Further, the notes and deeds are not irreparably split: the split only renders the mortgage unenforceable if MERS or the trustee, as nominal holders of the deeds, are not agents of the lenders. See Landmark Nat'l Bank, 216 P.3d at 167.  Moreover, the plaintiffs have not alleged violations of Arizona recording and foreclosure statutes related to the purported splitting of the notes and deeds.

Id. at 1044.

Echoing the borrowers in Cervantes, Del Piano alleges that MERS has no standing to foreclose on her loan, because it is not the proper holder of her Note: "Since MERS was not the owner

21

of the underlying note, MERS can not transfer the note or the
beneficial interest in the mortgage.  Therefore, the assignment
of the mortgage to HSBC BANK USA, N.A., Doc #2010-190976, was
ineffective and/or void."  Am. Compl. ¶ 7.3, ECF No. 45.  Del
Piano further alleges, "Since MERS has never been the owner of
the underlying note, MERS is not a Creditor in due course, or a
true party in interest."  Id. ¶ 7.5.

Del Piano misunderstands MERS's role in the mortgage
loan process.  As explained by the Ninth Circuit in Cervantes,
MERS is an agent of the lender.  Acting as the lender's nominee
of record, MERS is a vehicle for the lender's transfer of
ownership or servicing rights without public recordation of those
transfers.  MERS, as a nominee, holds Del Piano's Note on behalf
of the lender (originally Express Capital and currently HSBC),
which also holds the Mortgage.  Even if MERS cannot independently
foreclose, the Note and Mortgage are not split such that HSBC
cannot foreclose.  See Cervantes, 656 F.3d at 1044.

Moreover, Del Piano's "show-me-the-note" defense to
foreclosure is baseless.  Del Piano cites no provision requiring
the lender to show her the original note.  What Del Piano does
cite is the U.C.C. provision concerning presentment, codified at
section 490:3-501 of Hawaii Revised Statutes.  However, Del Piano
agreed to waive her right to presentment when she executed the
Note.  See Adjustable Rate Note at 3, attached as Exhibit "A" to

22

MERS Motion, ECF No. 79 ("I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor.  'Presentment' means the right to require the Note Holder to demand payment of amounts due.").  Del Piano's Opposition also cites inapposite cases, none of which stands for the proposition that a lender must produce the "original," "wet-ink note" before foreclosing.  Rather, the cases stand for the unchallenged proposition that the foreclosing party must be the proper holder of the mortgage and note at the time of foreclosure.  See Opposition at 8-11, ECF No. 93.

This district has explicitly rejected the "show-me-the-note" theory:

> This so-called show me the note theory has been routinely rejected by district courts throughout the Ninth Circuit. Although the Court does not cite unpublished opinions as precedent, the following cases from the District of Hawaii reject the show me the note argument: Krakauer v. IndyMac Mortg. Servs., 2010 WL 5174380, at *9 (D. Haw. Dec. 14, 2010); Brenner v. Indymac Bank, F.S.B., 2010 WL 4666043, at *7 (D. Haw. Nov. 9, 2010); Angel v. BAC Home Loan Servicing, 2010 WL 4386775, at *10 (D. Haw. Oct. 26, 2010).

Foth v. BAC Home Loans Servicing, LP, No. CV 11-00114 DAE-BMK, 2011 WL 3439134, *8 n.4 (D. Haw. Aug. 4, 2011).  Del Piano cannot avoid foreclosure by repeatedly demanding the original Note.

Nor does Del Piano's reference to a "robo-signer" invalidate her mortgage or discharge her debt.  Del Piano does

not offer any evidence that the Assignment was signed by a person without authority to act or without knowledge of the contents of the Assignment or its validity.  See Assignment of Mortgage, attached as Exhibit "C" to MERS Motion, ECF No. 79.  Del Piano baldly asserts that Murray, who was employed by OneWest Bank, an HSBC agent, had a conflict of interest or engaged in fraud in signing a document on behalf of MERS, the assignor.  See Opposition at 18, ECF No. 93.  She cites no authority for this proposition and does not indicate how she could have been harmed by Murray's signing on behalf of MERS.

Finally, Del Piano argues in her Third CFR that the court should allow her to conduct discovery "that includes evidence that these Defendants are or are not the real party in interest, and/or other irregularities, making enforcement by Defendants, and/or the true party in interest impossible.  Then, Plaintiffs will likely seek to amend this Amended Complaint alleging various additional causes of action, which may include a quiet title action."  Am. Compl. ¶ 11.2, ECF No. 45.

The Third CFR seeks leave of court to do that which she could have done pursuant to court rules without leave of court. This is not a viable claim at all.  Moreover, Del Piano offers no reason that she could not seek discovery from Defendants to ensure "that the true party in interest be established, through discovery, by strict and credible proof."  Id. ¶ 11.3.  MERS

Defendants state that "the Motion was filed more than 3 months ago, the original Complaint was filed more than 1 year ago, the Amended Complaint was filed more than 8 months ago, and during this entire time, Plaintiff has not propounded a single set of discovery on Defendants."  Reply to Plaintiff's "Response" to Defendants [77] Mot. for Summ. J. (Re: Am. Compl. for Verification of Debt Else Release of Claim and for Declaratory and Inj. Relief, Filed May 20, 2011) at 10, ECF No. 95 (emphasis in original).

At the hearing on the present motion, Del Piano referred to written questions she had sent to all Defendants but that Defendants had failed to answer.  Del Piano argued that these questions were necessary to prosecute her claims and insisted that Defendants have wrongfully withheld answers to those questions.  If Del Piano was referring to questions attached to her Opposition as Exhibit "A," those questions did not constitute discovery requests propounded in this lawsuit. They appear to have been sent on or around April 28, 2010, well before Del Piano filed her Complaint on January 25, 2011.  Court rules governing discovery during litigation therefore did not apply to those questions.  As Del Piano did not propound the questions as discovery requests, she may not rely on discovery rules in asking the court to order Defendants to respond to them.

25

Del Piano gives the court no reason to delay disposition of her claims.  The court grants summary judgment to all Defendants as to the Second COA, Third COA, Fourth COA, and Third CFR.

C.    Injunctive And Declaratory Relief (First CFR, Second CFR).

MERS Defendants argue that the First CFR and Second CFR, which seek injunctive and declaratory relief, are moot and do not provide proper vehicles for relief.  The court agrees.

To the extent Del Piano is seeking to enjoin the non-judicial foreclosure instituted on December 9, 2010, and subsequently postponed, that matter is moot.  On June 9, 2011, HSBC recorded a Notice of Rescission terminating the pending foreclosure.  See Notice of Rescission, attached as Exhibit "G" to MERS Motion, ECF No. 79.  With respect to any nonjudicial foreclosure, the court is no longer faced with the live case or controversy required by the United States Constitution, article III, section 2.  See Saiki v. LaSalle Bank Nat'l Ass'n as Tr. for Structured Asset Investment Loan Trust Series 2003-BC2, Civil No. 10-00085 JMS/LEK, 2011 WL 601139, *3 (D. Haw. Feb. 10, 2011) ("The court agrees that the Notice of Rescission moots Plaintiff's claims based on Notice of Foreclosure--there is no existing controversy based on the Notice of Foreclosure because Cal-Western rendered the Notice of Foreclosure void by rescinding

26

it.  In other words, Defendants cannot foreclose on the subject property unless they issue a new Notice of Foreclosure.").

To the extent Del Piano is seeking declaratory relief "forever barring Defendants from ever seeking to foreclose on the Property," Am. Compl. ¶ 10.2, the court grants MERS Defendants' Motion because, as alleged in the Amended Complaint, it is not cognizable as an independent cause of action.  See Seattle Audubon Soc. v. Moseley, 80 F.3d 1401, 1405 (9th Cir. 1996) ("A declaratory judgment offers a means by which rights and obligations may be adjudicated in cases brought by any interested party involving an actual controversy that has not reached a stage at which either party may seek a coercive remedy and in cases where a party who could sue for coercive relief has not yet done so." (citation and quotation signals omitted)).  Del Piano's declaratory relief claim is based on arguments regarding Defendants' lack of standing.  Because the court rejects those arguments, the court rejects the declaratory relief claim.

Regarding Del Piano's claim for injunctive relief, the court agrees with MERS Defendants that a claim for "injunctive relief" alone is not a cause of action.  See, e.g., Jensen v. Quality Loan Serv. Corp., 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of action"); Henke v. Arco Midcon, L.L.C., 2010 WL 4513301, at *6 (E.D. Mo. Nov. 2, 2010) ("Injunctive relief,

27

however, is a remedy, not an independent cause of action."); <u>Plan Pros, Inc. v. Zych</u>, 2009 WL 928867, at *2 (D. Neb. Mar. 31, 2009) ("no independent cause of action for injunction exists"); <u>Motley v. Homecomings Fin., LLC</u>, 557 F. Supp. 2d 1005, 1014 (D. Minn. 2008) (same).  Injunctive relief would only be available if Del Piano were entitled to such a remedy on an independent cause of action.  The court grants summary judgment to all Defendants as to the First CFR and Second CFR.

     D.   <u>Breach Of Contract (Fourth CFR).</u>

       Del Piano alleges breach of contract against MERS and HSBC, apparently based on their attempts to foreclose on her property.  To prevail on a breach of contract claim, Del Piano must establish "(1) the contract at issue; (2) the parties to the contract; (3) whether Plaintiff performed under the contract; (4) the particular provision of the contract allegedly violated by Defendants; and (5) when and how Defendants allegedly breached the contract."  <u>Honold v. Deutsche Bank Nat'l Trust Co.</u>, Civ. No. 10-00625 JMS/BMK, 2010 WL 5174383 (D. Haw. Dec. 15, 2010) (citing <u>Otani v. State Farm Fire & Cas. Co.</u>, 927 F. Supp. 1330, 1335 (D. Haw. 1996) ("In breach of contract actions, [] the complaint must, at a minimum, cite the contractual provision allegedly violated.  Generalized allegations of a contractual breach are not sufficient.")).

Del Piano fails to plead any of these elements in the
Amended Complaint, other than to generally allege that MERS and
HSBC "have breached their contract with Plaintiff Del Piano by
attempting to foreclose the property in violation of Hawaii law
and the Deed of Trust and Promissory Note."  Am. Compl. ¶ 12.2,
ECF No. 45.  Del Piano moreover fails to offer supporting facts
or argument in her Opposition, which does not appear to address
the Fourth CFR at all.

Even assuming that the supposedly invalid transfer and
any threatened foreclosure violated a state statute, Del Piano
fails to sufficiently explain what contractual provision is at
issue and how that contract was breached by the foreclosure
action.  The court grants summary judgment to MERS and HSBC as to
the Fourth CRF.

E.   <u>RESPA (Fifth CFR).</u>

Del Piano's final claim, against IndyMac for an alleged
violation of the Real Estate Settlement Practices Act ("RESPA"),
alleges that IndyMac, the servicer, failed to respond to her
inquiries, as required by 12 U.S.C. § 2605(e).  That section
provides, in relevant part, that when a servicer receives a
qualified written request from a borrower regarding the servicing
of a loan, it has a duty to respond to the inquiry:

> (e) Duty of loan servicer to respond to
> borrower inquiries
>
> (1) Notice of receipt of inquiry

29

(A) In general

If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

(B) Qualified written request

For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—

(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1).  If the servicer receives a qualified written request, it is obligated to respond within a statutorily prescribed period of time.  12 U.S.C. § 2605(e)(2).

The statute only concerns requests "for information relating to the servicing of such loan."  12 U.S.C.

§ 2605(e)(1)(A).  Servicing is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan."  12 U.S.C. § 2605(i)(3).

Correspondence that does not address the servicing of the loan does not require a response under this statute.  See Williams v. Wells Fargo Bank, N.A., Inc., No. C 10-00399 JF (HRL), 2010 WL 1463521, *3 (N.D. Cal. 2010) ("Plaintiffs' request was unrelated to the servicing of the loan. . . . Not all requests that relate to the loan are related to the servicing of the loan."); Jensen v. Quality Loan Serv. Corp., 702 F. Supp. 2d 1183, 1196 (E.D. Cal. 2010) ("The FAC also fails to allege facts indicating that the written correspondence served on JPMorgan concerned the servicing of Plaintiff's loan, which is required to qualify the correspondence as a 'qualified written request' under RESPA.  A conclusory allegation that the correspondence was a 'Qualified Written Request' is insufficient."); MorEquity, Inc. v. Naeem, 118 F. Supp. 2d 885, 901 (N.D. Ill. 2000) ("None of the irregularities . . . relate in any way to the 'servicing' of the loan, as that term is defined in the statute.  The counterclaim alleges a forged deed, and irregularities with respect to the recording of the two loans, but makes no claim with respect to

31

improper servicing.  There are no claims, for example, that MorEquity did not give the Naeems credit for any periodic payments made, which is how the statute defines servicing. According to the allegations of the counterclaim, the letter sought information about the validity of the loan and mortgage documents, but made no inquiry as to the status of the Naeem account balance.").

Del Piano's letter to Defendants of April 28, 2010, was correspondence that identified "the name and account of the borrower," 12 U.S.C. § 2605(e)(1)(B)(i), and sufficiently identified the "information sought by the borrower," 12 U.S.C. § 2605(e)(1)(B)(ii), but it otherwise is not a valid qualified written request.  Del Piano's letter took issue with Defendants' standing to foreclose and demanded a return of the Note, but did not dispute any servicing-related issues.  See Letter from L. Del Piano to Express Capital et al., attached as Exhibit "A" to Opposition, ECF No. 93.  Del Piano's 17-page letter appears to be based on a form document, as many of the questions and requests concern unrelated and irrelevant issues.  The letter contains hundreds of questions and requests for documents, including 24 questions related to servicing.  Id. at 14-15.  None of the 24 questions, however, disputes the status of Del Piano's account or requests an accounting of her loan.  See id.  At most, the questions pertain to the loan origination and subsequent

assignments, rather than payments on her account.  That is, Del

Piano's demand that Defendants answer her questions and provide

documentation did not compel a response from IndyMac under 12

U.S.C. § 2605(e).

IndyMac also argues that Del Piano did not establish

any injury based on IndyMac's failure to respond to her letter.

Section 2605(f)(1) provides for the recovery of damages:

> Whoever fails to comply with any provision of
> this section shall be liable to the borrower
> for each such failure in the following
> amounts:
>
> (1) Individuals
>
>> In the case of any action by an
>> individual, an amount equal to the sum
>> of—
>>
>>> (A) any actual damages to the
>>> borrower as a result of the
>>> failure; and
>>>
>>> (B) any additional damages, as the
>>> court may allow, in the case of a
>>> pattern or practice of
>>> noncompliance with the requirements
>>> of this section, in an amount not
>>> to exceed $1,000.

12 U.S.C. § 2605(f).

IndyMac contends that Del Piano's alleged emotional

distress is insufficient to establish "actual damage" under the

statute.  See, e.g., Soriano v. Countrywide Home Loans, Inc., No.

09-CV-02415-LHK, 2011 WL 1362077, at *6 (N.D. Cal. Apr. 11, 2011)

(reasoning that "even if a RESPA violation exists, Plaintiff must

33

show that the losses alleged are causally related to the RESPA violation itself to state a valid claim under RESPA"); Shepherd v. Am. Home Mortg. Servs., Inc., No. Civ. 2:09-1916 WBS GGH, 2009 WL 4505925, at *3 (E.D. Cal. Nov. 20, 2009) ("[A]lleging a breach of RESPA duties alone does not state a claim under RESPA. Plaintiff must, at a minimum, also allege that the breach resulted in actual damages.") (quoting Hutchinson v. Del. Sav. Bank FSB, 410 F. Supp. 2d 374, 383 (D.N.J. 2006)).

The Amended Complaint only alleges that "[a]s a result of INDYMAC FINANCIAL SERVICES Home Loans Servicing, LP's failure to respond, Plaintiff has suffered emotional distress in an amount to be determined at trial.  Plaintiff is further entitled to recover 'actual damages' to be proven at trial . . . ."  Am. Compl. ¶ 13.3, ECF No. 45.  Del Piano does not address the issue of damages in her Opposition.

In this summary judgment proceeding, Del Piano presents no evidence of "actual damages" under § 2605(f)(1)(A).  It is unclear whether her alleged emotional distress constitutes "actual damages":

> The Ninth Circuit has not decided whether emotional distress can constitute "actual damages" for purposes of § 2605(f), and cases are split. See, e.g., Hutchinson, 410 F. Supp. 2d at 383 n.14 ("It is unclear whether 'actual damages' under RESPA encompasses emotional distress. The district courts are split and no Court of Appeals has addressed the issue.").  Other caselaw indicates that the "majority of . . . federal courts . . .

34

> [find] that such emotional damages are a part
> and parcel of the 'actual damages' "under
> § 2605(f).  <u>Wienert v. GMAC Mortg. Corp.</u>,
> 2009 WL 3190420, at *10 (E.D. Mich. Sept. 29,
> 2009).  "[C]ourts that 'have examined
> § 2605(f) have consistently found that
> 'actual damages' includes emotional distress
> damages."  <u>Moon v. GMAC Mortg. Corp.</u>, 2009 WL
> 3185596, at *5 (W.D. Wash. Oct. 2, 2009).

<u>Skaggs v. HSBC Bank USA, N.A.</u>, Civil No. 10-00247 JMS/KSC, 2011 WL 3861373, *16 (D. Haw. Aug. 31, 2011).

As in <u>Skaggs</u>, this court does not here determine whether Del Piano's emotional distress qualifies as "actual damages."  Even assuming emotional distress does qualify, Del Piano fails to establish that she was distressed "as a result of" IndyMac's failure to respond to her April 28, 2010 letter.  She does not support her Sixth CFR in her Opposition or otherwise offer any factual or legal basis upon which the court could find that she was indeed distressed, much less that any distress resulted from a lack of response.  Because, even assuming Del Piano's April 28, 2010, letter is a qualified written request, she fails to establish that she suffered actual damages as a result of IndyMac's failure to respond to her letter, summary judgment is granted to IndyMac as to the Fifth CFR.

V.   <u>THE HSBC MOTION FOR SUMMARY JUDGMENT.</u>

Having rescinded the nonjudicial foreclosure notice, HSBC now moves for a judicial decree of foreclosure and an order that the property be sold pursuant to the terms of the Mortgage.

Del Piano relies on the same arguments that she presented in opposition to the MERS Motion.  Thus, for the reasons discussed earlier in this order, the HSBC Motion is granted.

HSBC represents that, as of May 1, 2009, Del Piano was in default under the Note and Mortgage.  <u>See</u> Decl. of C. Boyle ¶ 9, attached as Exhibit "1" to HSBC's Separate and Concise Statement of Fact ("HSBC CSF"), ECF No. 79-1.  On October 15, 2009, OneWest sent Del Piano a letter advising her of her default under the Note and Mortgage and provided her with 30 days to cure the default.  <u>See</u> Letter from IndyMac to L. Del Piano (Oct. 15, 2009), attached as Exhibit "D" to HSBC CSF, ECF No. 79-5.  HSBC says that Del Piano failed to cure the default.  <u>See</u> Decl. of C. Boyle ¶ 9, ECF No. 79-1.  According to HSBC, as of March 8, 2011, the total amount owed by Del Piano is $474,890.57, plus attorneys' fees and costs.  <u>See</u> Customer Account Activity Statement, attached as Exhibit "H" to HSBC CSF, ECF No. 79-9.

Del Piano's untimely opposition to the HSBC Motion merely restates her arguments to the MERS Motion and fails to directly contest any of the evidence HSBC presents.  Because her defenses fail, as discussed earlier in this order, summary judgment is granted in favor of HSBC.  HSBC is directed to submit a proposed order and foreclosure decree to all parties and the court.

VI.   <u>CONCLUSION.</u>

For the foregoing reasons, the MERS Motion is GRANTED as to all counts.  Because all arguments made by MERS Defendants are applicable to all Defendants, the court grants summary judgment as to all Defendants.

Summary judgment is also GRANTED as to the HSBC Motion. HSBC is directed to submit a proposed order and foreclosure decree to all parties and the court within 14 days of the date of this order.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February 24, 2012.



 /s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

<u>Del Piano et al. v. Mortgage Electronic Registration Systems, Inc. et al.,</u> Civ. No. 11-00140 SOM/BMK; ORDER GRANTING (1) DEFENDANTS MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S, ONEWEST BANK, FSB'S, HSBC BANK USA, N.A., A NATIONAL ASSOCIATION, AS TRUSTEE FOR BCAP 2008-IN1'S, SUCHAN MURRAY'S, AND INDYMAC FINANCIAL SERVICES, INC.'S (INCORRECTLY NAMED IN THE AMENDED COMPLAINT AS INDYMAC FINANCIAL SERVICES) MOTION FOR SUMMARY JUDGMENT (RE: AMENDED COMPLAINT FOR VERIFICATION OF DEBT ELSE RELEASE OF CLAIM AND FOR DECLARATORY AND INJUNCTIVE RELIEF, FILED MAY 20, 2011); (2) DEFENDANT FIRST AMERICAN TITLE INSURANCE CO.'S JOINDER; AND (3) HSBC BANK USA, N.A., A NATIONAL ASSOCIATION, AS TRUSTEE FOR BCAP 2008-IN1'S MOTION FOR SUMMARY JUDGMENT (RE: HSBC'S BANK USA, N.A.'S COUNTERCLAIM FOR FORECLOSURE), AND FOR INTERLOCUTORY DECREE OF FORECLOSURE